UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NEIL T. LARSON,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION;<br><br>    Defendant. | 4:18-CV-04121-VLD<br><br>ORDER AS TO COMMISSIONER'S OBJECTIONS TO LARSON'S BILL OF COSTS<br><br>Docket No. 25 |

## INTRODUCTION

This matter is before the court on the Commissioner's objections to the awarding of costs to Mr. Larson, the prevailing party in this appeal of the Commissioner's decision denying him Social Security disability benefits. See Docket No. 25. The parties have consented to this magistrate judge handling this matter pursuant to 28 U.S.C. § 636(c).

## FACTS

The facts bearing on the Commissioner's objection are as follows. Mr. Larson applied for Social Security disability benefits and the Commissioner in a final decision denied that application. Mr. Larson then appealed the Commissioner's decision to this court. Upon filing his complaint in this matter to pursue his appeal, Mr. Larson filed an application to proceed *in forma*

*pauperis* ("IFP"), alleging he was unable to prepay the court's $350 filing fee, normally due in full at the time of filing a complaint. See 28 U.S.C. § 1914, Docket No. 3.

In his motion, Mr. Larson told the court his monthly gross pay is $10 to $30, derived from giving neighbors rides to appointments. See Docket No. 2. He stated he had no other source of income and that his parents paid all his living expenses. Id. Mr. Larson stated he had no money in any bank accounts, he lived in subsidized housing, and he received government assistance for heating expenses and food. Id. He stated he owned a 1999 Buick Century automobile with 200,000 miles on it, worth an estimated $1,000. Id. He listed his debts as including medical and other bills he was unable to pay. Id. The court granted Mr. Larson permission to proceed without prepayment of the court's filing fee. See Docket No. 5.

After full briefing in this matter, the court granted Mr. Larson's motion to reverse and remand this matter to the Commissioner, making him a "prevailing party" under 28 U.S.C. § 2412. Thereafter, he filed a bill of costs and a motion for an award of attorney's fees pursuant to § 2412. See Docket No. 21 & 22. The sole cost Mr. Larson sought to recover was this court's filing fee, which he requested the Commissioner pay directly to this court on his behalf.[1] See Docket No. 21.

---

[1] Mr. Larson requested $400 for the filing fee but, in fact, the filing fee required is $350 because of Mr. Larson's IFP status.

Thereafter, the Commissioner filed pleadings indicating it did not object to the award of attorney's fees to Mr. Larson or the amount of those fees. See Docket No. 24. The Commissioner did object, however, to Mr. Larson's request for costs. See Docket No. 25. The Commissioner's objection is premised on Mr. Larson's having been granted permission to proceed IFP and the provision found at 28 U.S.C. § 1915(f)(1). Id. See also Docket No. 28.

Mr. Larson filed a response stating if the court waives his obligation to pay the filing fee in its entirety, he takes no position on the Commissioner's objection. See Docket No. 29. If the court requires Mr. Larson to pay the filing fee, he requests the Commissioner be assessed the filing fee as a cost. Id. Mr. Larson cites no law at all in his response. Id.

## DISCUSSION

**A.    Section 1915**

Section 1915 is the statute authorizing courts to grant *in forma pauperis* ("IFP") status. Subsection (a)(1) of 28 U.S.C. § 1915 provides: "Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefore, by a person who submits an affidavit that includes a statement of all assets *such prisoner* possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." (emphasis added).

3

Subsection (f)(1) of 28 U.S.C. § 1915 provides: "Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred." It is this provision on which the Commissioner's objection to paying the filing fee is based.

Courts have examined the use of the word "prisoner" in subsection (a)(1) to determine if Congress intended for IFP status to be limited to prisoners. The unanimous consensus among reported appellate decisions is that the use of the word "prisoner" was a mere typographical error and that Congress intended to mean "person" instead of prisoner. Andrews v. Cervantes, 493 F.3d 1047, 1051 n.1 (9th Cir. 2007); Lister v. Dept. of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005); Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1306 n.1 (11th Cir. 2004); Haynes v. Scott, 116 F.3d 137, 139-40 (5th Cir. 1997); Floyd v. U.S. Postal Serv., 105 F.3d 274, 276 (6th Cir. 1997), superseded on other grounds by FED. R. AP. P. 24 as noted in Owens v. Keeling, 461 F.3d 763 (6th Cir. 2006). Thus, courts apply section 1915 to all cases where IFP status is sought, not just to prisoner cases.

**B.     History of 28 U.S.C. §§ 1915 & 2412**

Reaching back into history, the court notes prior to 1940, 28 U.S.C. § 836 provided in connection with IFP cases that "[j]udgment may be rendered for costs at the conclusion of the suit as in other cases: *Provided*, That the United States shall not be liable for any of the costs thus incurred." Section

4

836 was codified amidst several other statutes dealing with IFP status in the 1940 code.

In 1948, Congress undertook the passage of a massive bill encompassing nearly all of what we now know to be Title 28 of the United States Code. The bill was entitled simply "Judicial Code and Judiciary." The legislative history for the bill was so enormous it had to be published in an appendix separate from the regular volumes of United States Code Congressional and Administrative News. The House Committee report on the bill--which comprehensively explained the reason for each provision in the bill--was over 600 pages long. See H.R. Rep. 80-308 on H.R. 3214, a bill to revise, codify, and enact into law Title 28 of the United States Code, entitled "Judicial Code and Judiciary."

The House Committee report says in pertinent part regarding § 1915: "A provision in section 836 of this title 28, U.S.C., 1940 ed., that the United States should not be liable for costs was deleted as covered by section 2412 of this title." See H.R. Rep. 80-308 at A161.

As enacted in 1948, subsection (e) of § 1915 read as follows: "Judgment may be rendered for costs at the conclusion of the suit or action as in other cases and if the United States has paid the cost of a stenographic transcript for the prevailing party, the same shall be taxed in favor of the United States." See Judiciary and Judicial Procedure, Pub. L. No. 80-773, ch. 123, § 1915(e), 62 Stat. 869, 955 (1948). This provision did not expressly prohibit costs being assessed against the United States as a party in IFP cases. As noted by the

5

House committee report, that issue was now to be addressed by 28 U.S.C. § 2412.

Section 2412(a) as passed in 1948 provided as follows: "The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress." See Judiciary and Judicial Procedure, Pub. L. No. 80-773, ch. 123, § 2412(a), 62 Stat. 869, 973 (1948). The House Committee report explained the intent behind subsection (a) of 2412:

> Subsection (a) [of § 2412] is new. It follows the well-known common-law rule that a sovereign is not liable for costs unless specific provision for such liability is made by law. This is a corollary to the rule that a sovereign cannot be sued without its consent.
>
> Many enactments of Congress relating to fees and costs contain specific exceptions as to the liability of the United States. (See, for example, section 548 of title 28, U.S.C., 1940 ed.). A uniform rule, embodied in this section, will make such specific exceptions unnecessary.

See H.R. Rep. 80-308 at A189. Thus, in 1948, although § 1915 did not expressly prohibit the assessment of costs in IFP cases against the United States, § 2412 did so by prohibiting the assessment of costs unless affirmatively allowed by an act of Congress.

Then, in 1951, Congress amended § 1915(e). See Amendment of Certain Titles, Pub. L. No. 82-248, § 51(c), 65 Stat. 710, 727 (1951). The new subsection (e) in § 1915 read in pertinent part as follows: "Judgment may be rendered for costs at the conclusion of the suit or action as in other cases, but the United States shall not be liable for any of the costs thus incurred." Id. The legislative history accompanying the 1951 bill indicates no substantive

6

changes were being wrought, only that certain "improvements of a minor character" were being enacted "in the interest of clarity, uniformity, and accuracy, . . ." See S.R. Rep. 82-1020 at 2578.

The Senate report stated that § 1915(e) was amended "to make it clear that the United States shall not be liable for costs incurred in proceedings in forma pauperis. The amendment restores a provision contained in former section 836 of title 28, United States Code (act July 20, 1892, ch. 209, § 5, 27 Stat. 252), from which such section 1915(e) was partly derived." Id. at 2593. Section 1915(e) remains today in the same form as it was enacted in 1951, except that the passage of the Prison Litigation Reform Act ("PLRA") in 1996 moved the provision to its present location in subsection (f)(1) of § 1915.[2]

At this point, in the year 1951, although § 1915(e) was redundant—it simply repeated the rule already set forth in § 2412(a)—there was as yet no conflict between the two statutes. However, in 1966, Congress amended § 2412 to allow prevailing parties to recover court costs against the United States. See 1966 Pub. L. No. 89-507, § 1, 80 Stat. 308, 308 (1966).

The 1966 bill was initiated through an executive communication from the Department of Justice ("DOJ"), which recommended its enactment. See S.R. Rep. 1329 at 2528. According to legislative history, the DOJ was concerned about the then-present state of the law in that it contained a disparity in treatment between private litigants and the United States

---

[2] The only change was the word "proceedings" was substituted for "cases." See 28 U.S.C. § 1915(f)(1).

7

concerning court costs. Id. The bill was intended to "correct this disparity by putting the private litigant and the United States on an equal footing as regards the award of court costs to the prevailing party in litigation involving the Government." Id. The report went on to state that "the present inequality is related to a governmental advantage derived from the principle favoring immunity of the sovereign from suit. Under modern conditions, there is no reason for this advantage when the law provides for suit against the Government." Id.

In an analysis of the law, the Senate Report stated section 2412 was being amended to allow only court costs, not attorney's fees, and only those costs actually incurred by the prevailing party. Id. at 2529. As it was amended in 1966, 28 U.S.C. § 2412(a) provided in pertinent part as follows:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, . . . be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation.

See An Act to Provide for Judgments for Costs Against the United States, Pub. L. No. 89-507, § 1, 80 Stat. 308, 308 (1966). The legislative history of this amendment contains no discussion of § 1915(e) or of the preliminary clause, "[e]xcept as otherwise specifically provided by statute . . ."

In 1980, the Congress extended § 2412 to allow private prevailing parties to recover their attorney's fees as well as costs in proceedings against the

8

United States in federal court. This was the Equal Access to Justice Act ("EAJA"). The EAJA also created a like provision allowing an award of attorney's fees and expenses against the United States in proceedings before an administrative agency, which became part of 5 U.S.C. § 504. The original EAJA had a three-year "sunset" provision whereby the act expired in 1984. See Pub. L. No. 96-481 at 33 (p. 27). It was permanently re-enacted in 1985. See An Act to amend section 504 of title 5, United States Code, and section 2412 of title 28, United States Code, with respect to awards of expenses of certain agency and court proceedings and for other purposes, Pub. L. No. 99-80, 99 Stat. 183 (1985). The current version of § 2412(a) concerning an award of costs against the government remains substantially identical to the version of that provision that Congress passed in 1966.

The impetus of the EAJA, like the 1966 amendment concerning costs, was to right an inequity, to create parity between the government and the "little guy," whether that be a private litigant or a small business. See 1980 Pub. L. No. 96-481, § 202, 94 Stat 2321, 2325 (1980). Congress found that individuals may be deterred from seeking review of or defending against unreasonable governmental action due to the expense involved in securing vindication of their rights in civil actions and administrative proceedings. Id. at § 202(a). Congress found that because the United States had greater resources and expertise, the standard for an award of fees against the government should be different. Id. at § 202(b). In order to address this situation, Congress expressed a desire to reverse the "American rule" in certain actions by or

against the government and to allow a prevailing party in an action involving the government to obtain costs and attorney's fees.  Id. at § 202(c).  See also id. at § 204, 94 Stat. 2327-30.

Further reinforcing Congress' intent to protect the "little guy," the EAJA disallows wealthy individuals and well-funded business associations from obtaining an award of attorney's fees against the government.[3]  See 28 U.S.C. § 2412(d)(2)(B).  Persons with such resources do not need the government to pay their attorneys and the cost of litigation is not a deterrent as to such persons.  As with the 1966 amendment allowing costs to be assessed against the United States, the EAJA was introduced as a bill in congress at the request and the behest of the DOJ.  See H.R. Rep. 96-1418 at 4985-86 (p. 7).

In discussing the statutory background against which it was passing the EAJA, the House Report acknowledged certain statutory exceptions to the "American rule" already existed—among them the Freedom of Information Act, the Civil Rights Attorneys Fee Awards Act of 1976 and *§ 2412*, which the House Report stated allowed "costs, but not attorney fees, [to] be awarded against the United States."  Id. at 4987 (p. 8).  The EAJA, the House Report stated, "reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties.  As such, it is consistent with the history of § 2412 which reflects a strong movement by Congress

---

[3] The current cut-off is $2 million for an individual and $7 million for an organization.  Any person or entity with a net worth more than this cannot obtain an award of attorney's fees or costs against the government—they are, by definition, not a "party" under the EAJA.  See 28 U.S.C. § 2412(d)(2)(B).

10

toward placing the Federal Government and civil litigants on a completely equal footing." Id. (p. 9). The Congress was clear: the EAJA was intended to "improve citizen *access to courts* and administrative proceedings." Id. at 4991 (p. 12).

In a section-by-section analysis of the EAJA, the House report states the new law "preserves the law of the existing section 2412 which provides for a discretionary award of costs *in any civil action brought by or against the United States*." Id. at 4996 (p. 17) (emphasis added). The EAJA contained a provision stating the amendment of § 2412 did not alter, modify, repeal, invalidate, or supersede any other federal law which authorized an award of attorneys fees and costs to a prevailing party against the United States. See 1980 Pub. L. No. 96-481, § 206, 94 Stat at 2330.

In summary, then, the following is the intertwined history of §§ 1915(f)(1) and 2412(a):

> --Prior to 1948 numerous provisions in the United States Code addressed when costs and attorneys fees could be assessed against the government when it lost in litigation
>
> --In 1948 Congress enacted § 2412(a) and repealed a similar provision in § 1915 concerning costs, stating it wanted one statute--§ 2412—to be the single statute addressing fees and costs against the government. Section 2412 did not allow costs or fees against the government at this time.
>
> --In 1951, Congress returned the "no award of fees" language to § 1915 in an amendment that was explicitly not intended to be a substantive amendment.
>
> --In 1966, Congress amended its "flagship," "lodestar" provision regarding fees and costs against the government--§ 2412—and provided prevailing parties *could* obtain an award of costs. No mention is made of § 1915 nor was that statute amended.

11

--In 1980 and 1985, Congress amended § 2412 to allow both costs and attorneys fees to be awarded to prevailing parties against the government. No discussion of § 1915 is found in the statute or the legislative history.

**B.     Analysis**

The purpose of both the 1966 and the 1980/1985 amendments to § 2412(a) allowing costs to be assessed against the government was explicitly to help the little guy who had few if any resources to fight the government in litigation. An explicit purpose of the EAJA was to increase citizens' access to their federal courts by evening the playing field between them and the government.

Parties who apply for and receive IFP status are the "littlest" of the little guys. They cannot even afford to pay the court's filing fee. The fact that costs are not allowed under § 1915(f)(1) to IFP litigants makes no sense when one surveys the applicable statutes. Why would Congress want to help the "little guy" by passing the EAJA, while at the same time unduly penalizing the "littlest of the little guys" by denying him and only him the right to recover costs against the United States?

The only way denying an award of costs to IFP litigants makes sense is if one of two scenarios is true. First, and most likely, Congress simply overlooked the fact that § 1915 conflicted with § 2412 when § 2412 was amended in 1966 and 1980/1985. Remember, in 1948 Congress passed § 2412 intending for that statute to be the only statute lawyers and judges had to make reference to in determining the

12

allowability of costs against the government.  Therefore, when later amending § 2412, it is reasonable to assume Congress thought it fully effectuated its intent by simply amending the one statute.

A second possibility is that Congress assumed that an IFP litigant need *never* pay the filing fee once he or she is granted IFP status.  The Commissioner in his brief in support of his objections to costs appears to assume this is the case when he argues "an *in forma pauperis* plaintiff does not incur the cost of a filing fee."  See Docket No. 28 at p. 3.  There is some authority outside the Eighth Circuit that a litigant who is granted IFP status never has to pay the filing fee to the court.

Congress expressed an intent—especially in the 1966 amendment to § 2412(a)—that an award of costs should be given *only* for those costs *actually incurred* by the prevailing party.  Thus, if an IFP litigant need never pay the filing fee once IFP status is granted, it would make sense that in IFP cases the government should not have to pay a cost that was not actually incurred by the litigant. There are two flies in the ointment of this theory.

First, the filing fee is not the only "cost" generally recoverable by the prevailing party in litigation.  See 28 U.S.C. § 1920.  But § 1915(f)(1) disallows *any* award of costs against the government by an IFP litigant.  Therefore, not only can the IFP litigant not recover the court filing fee, he or she is also prohibited from recovering witness fees, printing fees,

13

copying fees, or fees for interpreters and the like in cases against the government.  See 28 U.S.C. §§ 1915(f)(1) and 1920.

Unlike the filing fee, which an IFP litigant may or may not have been ordered to pay eventually over time, it is indisputable that these other costs, if applicable, would actually be costs incurred by the IFP litigant.  Why would Congress ensure that these costs actually incurred by an IFP litigant be unrecoverable?  This result is anomalous, especially when one considers all the other types of lawsuits against the United States in which prevailing litigants can obtain costs.  Carter v. Veterans Administration, 780 F.2d 1479, 1482 (9th Cir. 1986) (costs awarded to *pro se* plaintiff against the United States under Freedom of Information Act, 5 U.S.C. § 552); 42 U.S.C. § 1988 (allowing costs for prevailing party in civil rights litigation).

The second fly in the ointment of the theory that there was a logical reason to deny IFP litigants their costs is that it has never been the law in the Eighth Circuit that IFP status relieves a litigant from *ever* paying the filing fee.  The Seventh and Tenth Circuits as well as the Eighth have pointed out that § 1915(a) only relieves an IFP litigant from *pre*payment of fees, not from *ever* paying the filing fee.  See Brown v. Eppler, 725 F.3d 1221, 1231 (10th Cir. 2013); Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); In re Williamson, 786 F.2d 1336, 1338 (8th Cir. 1986).  All § 1915(a) does is excuse the payment in full of the

filing fee up front; litigants are still liable for fees to be paid when they are able. Robbins, 104 F.3d at 898.

Prior to the enactment of the PLRA, at least seven courts of appeals, including the Eighth Circuit, had held that § 1915 allows courts the discretion to order an IFP litigant to pay filing fees over time if the litigant could do so without undue hardship. See In re Williamson, 786 F.2d at 1338 (citing cases from the First, Third, Fourth, Fifth, Seventh and Eleventh Circuits). The Ninth Circuit also held similarly. Olivares v. Marshall, 59 F.3d 109, 111 (9th Cir. 1995) (stating pre-PLRA "Courts have discretion to impose partial filing fees under the *in forma pauperis* statute.").

The contrary rule suggested in other circuits[4] ignores the plain statutory language of § 1915(a)(1). Section 1915(a) allows indigent parties to file their lawsuits with the court without "*pre*payment" of fees. See 28 U.S.C. § 1915(a)(1). The statute does not relieve such parties from paying the filing fee altogether. Id. Even before the PLRA explicitly authorized courts to order prisoners to pay the filing fee despite their IFP status, the Eighth Circuit held that courts can require IFP litigants to pay the filing fee at some time after the lawsuit is filed, as the litigant is able to afford it. In re Williamson, 786 F.2d at 1338.

---

[4] See Pinson v. Samuels, 761 F.3d 1, 4 (D.C. Cir. 2014); McGann v. Commissioner, Social Sec. Admin., 96 F.3d 28, 30 (2d Cir. 1996) (both suggesting in *dicta* that a non-prisoner IFP litigant need never pay the filing fee).

15

The Tenth Circuit in Chambers v. Barnhart, 355 F.3d 1261, 1262-63 (10th Cir. 2004), disallowed costs against the Commissioner to an IFP plaintiff in a Social Security appeal on the basis of § 1915(f)(1).  However, the court was careful to note it was disallowing an application for costs under Federal Rule of Appellate Procedure 39, not an application for costs under the EAJA.  Id. at 1262 n.1.  An EAJA application, the court held, should be filed in the first instance in the district court.  Id.  Thus, the Chambers decision is limited by its terms to an application for costs by an IFP litigant under Fed. R. Ap. P. 39.  Id.  See also Maida v. Callahan, 148 F.3d 190, 193 (1998) (refusing to grant the Commissioner of Social Security costs under Fed. R. Ap. P. 39 as the prevailing party on appeal because costs must be reciprocally-awardable under Rule 39 and § 1915(f)(1) prevented the plaintiff from receiving costs under Rule 39).

In Grisso v. Massanari, 22 Fed. Appx. 656, 658 (8th Cir. Nov. 13, 2001), the Eighth Circuit held that an IFP plaintiff who was a prevailing party against the Commissioner of the Social Security Administration could recover costs under Fed. R. Civ. P. 54 and 28 U.S.C. § 2412(a).  In so holding, the Grisso court did not mention or discuss § 1915(f)(1).[5]  Id.

The court has several options.  It can read § 1915(f)(1) as the vestigial mistake it almost certainly is and award costs against the Commissioner in

---

[5] The court held such an award of costs was within the district court's discretion, but ultimately affirmed the district court's denial of costs because the prevailing party's victory was only a narrow one and he had already received some financial relief by being granted IFP status.  Grisso, 22 Fed. Appx. at 658.

16

this case.  Other courts have disregarded the plain language of § 1915(a) where it was clear that Congress made a mistake by using the word "prisoner" instead of "person."  Andrews, 493 F.3d at 1051 n.1; Lister, 408 F.3d at 1312; Martinez, 364 F.3d at 1306 n.1; Haynes, 116 F.3d at 139-40; Floyd, 105 F.3d at 276.

Alternatively, the court can enforce § 1915(f)(1) and not assess costs against the Commissioner, but require the plaintiff to pay the filing fee out of his award of attorney's fees.  The award of attorney's fees in a Social Security appeal belong to the plaintiff, not to the lawyer, and are subject to any debts the plaintiff may owe.  Astrue v. Ratliff, 560 U.S. 586, 589 (2010).  Here, the court can require Mr. Larson, an IFP plaintiff, to pay the filing fee if paying the fee will not work a hardship on him.

The first and cardinal canon of statutory construction is that courts "presume that a legislature says in a statute what it means and means in a statute what it says there."  Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-43 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete."  Id. at 254.  Despite this court's conviction that § 1915(f) is an overlooked mistake on Congress' part, the language of that provision is exceedingly clear.  Costs cannot be assessed against the United States when the plaintiff is proceeding *in forma pauperis*.  Accordingly, the court will not assess costs against the government herein.

The court gave Mr. Larson an opportunity to make his case on the issue of costs.  Not only did Mr. Larson fail to cite any law, he also did not argue that

requiring him to pay the court's filing fee out of his award of attorney's fees would work a hardship on him. The court's order granting Mr. Larson IFP status did not waive the filing fee altogether, but merely allowed Mr. Larson to proceed without *pre*paying that filing fee. See Docket No. 5. The court finds it would not work an undue hardship on Mr. Larson to pay that filing fee out of the attorney's fee recovery the court has awarded him. Accordingly, the court requires Mr. Larson to pay the court's $350 filing fee out of his award of attorney's fees.

## CONCLUSION

The Commissioner's objection to costs in the form of the court's filing fee being assessed against him (Docket No. 25) is sustained. Mr. Larson is ordered to pay the court's $350 filing fee out of his recovery of attorney's fees in this case.

DATED September 24, 2019.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
United States Magistrate Judge